## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**JERI BRITTON**                                                                      **PLAINTIFF**

**VS.**                                   **No. 3:19-cv-00246 PSH**

**ANDREW SAUL,  Commissioner,**
    **Social Security Administration**                                  **DEFENDANT**

### ORDER

Plaintiff Jeri Britton ("Britton"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Saul") to deny her claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law Judge's ("ALJ") finding that Britton can perform her past relevant work ("PRW") was not supported by substantial evidence.  Britton alleges two specific errors: (1) the ALJ failed to consider her long work record and other *Polaski* factors; and (2) the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence.  The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on January 24, 2019.  (Tr. 29-52).  The Court has carefully reviewed the

1

record to determine whether there is substantial evidence in the administrative record to support Saul's decision.    42 U.S.C. § 405(g).    The relevant period under consideration is from September 25, 2017, the date of alleged onset, through April 11, 2019, when the ALJ ruled against Britton.

*The Administrative Hearing:*

At the January 24, 2019 hearing Britton was 55 years old, 5'9" tall, weighed 249, and reported she held an associate's degree in radiologic technology, as well as certificates for secretarial, accounting, and data processing.  Britton last worked on September 25, 2017, quitting due to major headaches and problems with a co-worker. Britton resides with her mother.

When asked to identify the "most debilitating" problem preventing her from working, Britton cited degenerative joint disease in both knees. (Tr. 35).  She said she sometimes wears knee braces, typically in the morning and when she goes grocery shopping.  Britton stated she had left knee surgery followed by physical therapy in 2000, and had arthroscopic surgery on the left knee again in 2016.  According to Britton, her doctor ("Wallace") feels "it's getting close to time" for a total left knee replacement.  (Tr. 37).

Britton also testified she has type 2 diabetes and is insulin dependent.  When asked if the diabetes was controlled, Britton stated "some days are better than others."

(Tr. 38).   Additionally, Britton said she has migraine headaches on a regular basis, most recently a week before the hearing.   She also had a migraine two weeks before the hearing, but could not remember when she had another prior to then.   She suffers from nausea and vomiting on occasion with the headaches.   To treat them, Britton takes Tylenol or Ibuprofen and lies down in the dark.

Although a treating physician ("Long") diagnosed her with carpal tunnel syndrome in her left wrist, Britton stated she had no trouble using her hands.   Britton described neuropathy in her feet as "annoying" and "sometimes tingling" but otherwise not impairing her ability to walk. (Tr. 40).   According to Britton, Long also diagnosed a small slipped disc in her back, for which she takes Gabapentin and occasionally wears a non-prescribed back brace.   The Gabapentin works "most days." (Tr. 40).   Finally, Britton cited mental impairments of depression and anxiety, exacerbated by her dealings with a co-worker in her last job.   Britton stated she had taken Lexapro for ten years and had not been referred for a mental health evaluation or treatment.

Britton testified to her daily activities and abilities.   Her typical day included making breakfast and doing "a little housework" in ten minute increments.   (Tr. 41).   Britton stated she does errands once or twice a week, which includes driving to Wal-Mart, Dollar Store, Sonic, or McDonald's.   Britton estimated she could stand and walk

3

for ten minutes, could not sit for more than an hour without standing or stretching, and could not stand for more than thirty minutes due to left knee pain. She thought she could only lift about twenty pounds, but conceded she buys dog food weighing thirty-fifty pounds and is able, with difficulty, to lift it to the cart and put it in her truck. Britton stated that sitting at her last job was difficult due to generalized arthritis in her back and shoulders. (Tr. 33-47).

Amanda Armstrong ("Armstrong"), a vocational expert, testified. The ALJ posed a hypothetical question to Armstrong, asking her to assume a worker of Britton's age, education, and experience, who could lift and carry up to ten pounds occasionally and less than ten pounds frequently, could stand or walk for a total of two hours in a workday, but only thirty minutes at a time, could sit for six hours, but only one hour at a time, could remain at the workstation or remain on task during the shifting period, could only occasionally stoop, kneel, crouch, or crawl, and could occasionally climb stairs and ramps but no ladders, ropes, or scaffolds. Armstrong testified such a worker could perform Britton's past relevant jobs as an admission clerk and office manager. (Tr. 48-51).

*ALJ's Decision:*

In his April 11, 2019, decision, the ALJ determined Britton had not engaged in substantial gainful activity since September 25, 2017, the alleged onset date. Severe

impairments found by the ALJ were obesity, bilateral-knee degenerative joint disease and osteoarthritis, peripheral neuropathy, diabetes mellitus, migraines, irritable bowel syndrome, and hypertension. The ALJ determined Britton's asthma and mental impairments were not medically determinable as defined in the Social Security regulations. He found that Britton did not meet any Listing, and he explicitly addressed Listings 1.02, 4.00, 5.06, 9.00, and 11.14. The ALJ also considered the "paragraph B" criteria regarding mental impairments, finding that Britton had no limitation in understanding, remembering, or applying information, a mild limitation in interacting with others, a mild limitation in concentrating, persisting, or maintaining pace, and no limitation in adapting or managing oneself.

The ALJ determined that Britton had the RFC to perform sedentary work with restrictions which mirrored those contained in the initial hypothetical question posed to Armstrong. The RFC formulation was based, in part, upon the ALJ's determination that Britton's subjective statements "cannot be wholly accepted." (Tr. 17). The ALJ indicated he gave careful consideration to the relevant factors cited in SSR 16-3p. In making this determination, however, he focused heavily upon the objective medical evidence, considering the records and opinions of both treating and non-examining physicians. He specifically addressed the opinion of treating source APRN Harold Parsons ("Parsons"), finding it at odds with the medical evidence and based upon an

examination of less than all the medical records.  In short, the ALJ found Parsons' statement "not persuasive."  (Tr. 21).  In summarizing his RFC assessment, the ALJ again indicated he had carefully considered the whole record, "including the objective medical evidence, the claimant's allegations, the opinions of record, and all the other evidence."  (Tr. 21).  Relying upon Armstrong's testimony, the ALJ determined Britton was capable of performing her past relevant work.  Therefore, the ALJ concluded Britton was not disabled.  (Tr. 10-23).

*Medical Evidence During the Relevant Period:*

Britton was treated by various physicians and medical personnel at NEA Baptist Clinic during the relevant period.

Dr. Aaron Wallace ("Wallace") saw Britton in October 2017, a follow up visit from left knee arthroscopy performed in November 2016.  There were no post operative problems noted, though Britton's chief complaint was left knee pain. Wallace performed steroid injections on both knees.  He examined her bilateral extremities, finding their appearance normal, joints nontender, normal range of motion, and no instability.  (Tr. 792-797).

In November, laboratory examinations ordered by Dr. Arnold Gilliam ("Gilliam") reflected a hemoglobin A1c value of 10.5 and an average glucose value of 255.  (Tr. 855).  Britton saw Gilliam the week after the lab results, presenting with

"htn reflux dm adjustment disorder reflux and djd." (Tr. 798). Gilliam's assessment was diabetes mellitus "poor control," neuropathy stable, degenerative joint disease stable, reflux controlled, hypertension with increased blood pressure, and tinnitus. Gilliam spent a majority of the time counseling Britton on diabetes diet and care. (Tr. 798-801).

Britton saw Dr. Kevin Ganong ("Ganong") in January 2018, following up on a previous visit regarding diabetes. Ganong noted Britton did not keep a three month follow up scheduled visit. He also reported that Britton had improved her diet, quit her stressful job, and applied for disability. His assessment was type 2 diabetes, improved control, and his plan was for no change in medications, exercise as tolerated, adherence to diet, and return to see him in six months. (Tr. 806-809).

Late in January 2018, Britton returned for another follow up visit related to her November 2016 arthroscopy. The progress notes were written by APRN Harold Parsons ("Parsons"), who reported that steroid injections were given in both knees. In the "Plan" portion of the notes, Parsons noted Britton continued to benefit from steroid injections and was not yet ready for surgical intervention. He also wrote Britton "is only able to stand for 30 minutes at a time, requiring 30 minute seated breaks." (Tr. 815). Britton was instructed to return in three months.

Ganong saw Britton in February 2018 for a follow-up diabetic visit. Ganong

noted Britton to be following a diabetic diet, but still drinking sweet drinks and rarely exercising.  Her fasting blood sugars ranged from 99-225 and her premeal blood sugars from 86-284.  Ganong did not change any medications, directed Britton to continue with diet and exercise as instructed, continue with daily foot checks, and return in six weeks.  (Tr. 951-956).

Britton saw Gilliam on the same day of her visit with Ganong.  Gilliam assessed her with diabetes, poor recent control, lumbago chronic stable, reflux controlled, hypertension good, and skin lesion on hand.  (Tr. 956-960).

A lab test in April 2018 reflected a glucose value of 184.  (Tr. 943).

Britton had a follow up diabetic visit with Ganong in late April.  The diagnoses were type 2 diabetes with insulin therapy and essential hypertension.  Ganong increased her medication (Lantus), instructed her to keep a blood sugar log, continue with diet and exercise as instructed, and continue with daily foot checks.  (Tr. 919-925).

Britton again received steroid injections in her knees in late April 2018.  Her examination on the date of the injections reflected a non-antalgic gait, and her knees had full range of motion with mild crepitus and no instability.  (Tr. 918-919).  Two weeks later, Britton reported that the steroid injections did not relieve her pain, and she was given Toradol injections and a home exercise program to strengthen her

quadriceps.  She was instructed to return in three months.  (Tr. 913-914).

Lab tests in July showed a hemoglobin A1c value of 9.5 and an average glucose value of 226. (Tr. 885).

Britton saw Wallace at the end of July 2018.  Wallace noted her knee pain improves with rest, ice, avoiding painful activities, and injections, and the pain worsens with activity.  According to Wallace, Britton reported that the knee had not given out or felt unstable, and the Toradol injection had "significantly improved her symptoms."  (Tr. 1035).  Injections were administered and Britton was instructed to continue with quad strengthening exercises and return in three months.  (Tr. 1034-1039).

Lab tests in October showed a hemoglobin A1c value of 10.3 and an average glucose value of 249. (Tr. 1040).

Britton saw Wallace again in November 2018.  Her chief complaint was knee pain, and she also reported left shoulder pain.  Although the symptoms improved with rest, ice, and limited activities, Wallace recorded that "treatment to date has been without significant relief."  Wallace also wrote, "Patient is a sedentary worker and she has not missed work."  (Tr. 1051).  Britton described her knee pain as 8 on a scale of 1-10 at most times, and "at rest it can be 3/10."  *Id.*  Wallace administered injections, which Britton tolerated well.  Wallace and Britton discussed that a knee replacement

would be needed at a later date. (Tr. 1051-1057).

Lab tests in November showed a glucose value of 291. (Tr. 1068).

The Court now turns to Britton's claims for relief.

**The ALJ failed to consider her long work record and other Polaski factors:**

Britton maintains the evaluation of her subjective complaints was inadequate because the ALJ's decision was cursory and focused only on the medical evidence to the exclusion of other relevant factors, such as her lengthy work history.

As part of assessing the claimant's RFC, the ALJ is required to evaluate the subjective statements of the claimant. *See Pearsall v. Massanari*, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by determining whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain or other symptoms and, if so, evaluating the intensity, persistence, and limiting effects of the pain or other symptoms. *See* Social Security Ruling ("SSR") 16-3p. In making the latter evaluation, the ALJ must consider all the evidence, including evidence of the following:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning a claimant's

functional limitations and restrictions due to pain or other symptoms.
*See* SSR 16-3p.

In determining the consistency of Britton's allegations, the ALJ recited the factors enumerated in SSR 16-3p and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). The ALJ wrote that he gave "careful consideration" to those factors, and "to all the evidence presented related to the claimant's prior work history and the observations of non-medical third parties, as well as treating and examining physicians. . ." (Tr. 17). The ALJ noted Britton's allegations with respect to her symptoms and limitations, including her allegation that she finds a substantial range of activities to be extremely difficult, and that she is impaired in tending to personal care, hobbies and interests, and household chores. The ALJ further cited Britton's allegation that her conditions affected her ability to lift, walk, and bend, and her allegation that she could not walk "far" and needed thirty minutes of rest before resuming walking. (Tr. 17). He determined that "it is apparent that the claimant's alleged impairments, and the limitations they impose upon her capacities to perform regular and sustained work, cannot be wholly accepted." (Tr. 17).

The ALJ's evaluation of Britton's subjective complaints was not exhaustive and failed to explicitly mention her work history. The evaluation was nevertheless adequate and is supported by substantial evidence. The Court so finds for the

11

following reasons.

First, the ALJ could and did find that Britton has medically determinable impairments that could reasonably be expected to produce pain or other symptoms. Specifically, the ALJ could and did find that Britton's obesity, degenerative joint disease in her knees, osteoarthritis, neuropathy, diabetes, migraines, irritable bowel syndrome, and hypertension could reasonably be expected to produce pain and other symptoms. The ALJ stressed, however, that the *severity* of the subjective allegations was not borne out by the record.

Second, the ALJ thoroughly evaluated the objective medical evidence, emphasizing the numerous findings by the providers of retained functionality, of normal and intact muscle strength, normal range of motion, normal reflexes, and the absence of manipulative limitations. The ALJ also addressed the notes of APRN Parsons, which could be considered at odds with the otherwise consistent findings of Britton's physicians. The reasons cited by the ALJ for declining to embrace Parsons' notes (Parsons' failure to explain his conclusions, Parsons' failure to review the entire medical record, and the inconsistency of the findings themselves) are valid. Additionally, Parsons' notes, although contained in a paragraph titled "Plan," include other subjective assertions of Britton, and the limitations recorded by Parsons may well have been subjective allegations rather than objective medical determinations.

While stating that he considered all the relevant factors, the ALJ devoted scant attention to discussing the non-medical evidence.  And while a  more complete analysis of the non-medical evidence would have been helpful, the lack of such an evaluation does not warrant a remand here.  The ALJ is not required to explicitly discuss each relevant factor.  *See Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).  It is sufficient if the ALJ acknowledges and considers the factors before discounting the subjective complaints.  *Id.*  Also, the ALJ was aware of Britton's work history, mentioning it at the hearing and elsewhere in his decision.  (Tr. 48, 22).  This awareness, coupled with the ALJ's assertion that he considered Britton's work history, weighs in favor of his conclusions.  *See, e.g., Willburn v. Astrue*, 626 F.3d 999, 1003 (8th Cir. 2010) (an ALJ is presumed to have performed his duty when he states that he has done so).

The question for the ALJ was not whether Britton has pain or other symptoms caused by her impairments, but instead, the extent to which they impact the most she can do.  The ALJ incorporated limitations for Britton's impairments into her RFC, but not to the extent which she believes is warranted.  The ALJ could find as he did, though, because substantial evidence on the record as a whole supports his assessment of the subjective complaints.  There is no merit to the first claim for relief.

**The ALJ's RFC determination was not supported by substantial evidence:**

It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his [or her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The Court has already addressed a portion of the RFC assessment, as the evaluation of Britton's subjective allegations falls in the RFC category.

Britton also advances other arguments targeting the ALJ's RFC conclusion. First, Britton alleges the ALJ cited numerous examples of normal diagnostic results which were not relevant to her specific claim of disability due to knee problems. For example, Britton faults the ALJ for citing her normal muscle strength, range of motion, irritable bowel syndrome, etc., rather than focusing primarily on her osteoarthritis and degenerative knee problems. The Court finds no error in this regard. The ALJ's inclusion of an abundance of general objective medical results does not warrant a finding that the RFC conclusion is erroneous. The question remains – does substantial evidence support the ALJ's RFC decision regarding Britton's knee problems? The Court finds that it does. The ALJ acknowledged objective medical findings of diminished range of motion and tenderness. However, the ALJ also noted other factors supporting his ultimate conclusion. For example, medical providers did not generally find acute functional limitations due to knee issues. Instead, the ALJ

found Britton's knee problems were longstanding and "substantially unchanged over the period in issue." (Tr. 18). The record indicates Britton functioned in the workplace following arthroscopic knee surgeries in 2000 and in 2016. The ALJ noted that Britton testified to quitting her sedentary work due to issues (stress, headaches, and conflict with a co-worker) unrelated to her knees. Finally, it is significant that the ALJ determined that Britton was capable of performing less than the full range of sedentary work. Substantial evidence supports the ALJ's very restrictive RFC finding.

Britton also faults the ALJ's treatment of her A1c readings, values which reflected her diabetes issues throughout the relevant period. She notes that her high A1c levels suggest a "risk of serious complications such as heart attack, stroke, blindness, kidney failure, and amputations." Docket entry no. 19, page 19. The ALJ conceded that the A1c levels were elevated, but nevertheless reached the RFC conclusion which was consistent with Britton's past relevant work. No error occurred in this regard. While elevated A1c levels pose a risk of further complications, Britton does not allege these risks have developed in her instance. The ALJ was correct in assessing whether functional limitations flowed from the elevated readings, and correct in considering if those limitations precluded Britton from performing her past work.

Finally, Britton also faults the ALJ's evaluation of APRN Parsons' January 2018 treatment note, recording Britton "is only able to stand for 30 minutes at a time, requiring 30 minute seated breaks." (Tr. 815). The ALJ's RFC was slightly more demanding, finding her able to sit for one hour at a time, and for a total of six hours in the workday. The Court has previously addressed Parsons' entry, noting it was unclear whether Parsons was offering a medical opinion or recording Britton's subjective statements. Even assuming Parsons was opining on Britton's abilities, the ALJ accurately described Parsons' note as inconsistent with the remainder of the medical evidence and without adequate explanation of how Parsons arrived at this opinion. The Court is mindful that Britton's medical care was provided by numerous physicians at NEA Baptist, including Wallace, Gilliam, and Ganong. Parsons was also employed at NEA Baptist, and his treatment note is not seconded by any of the treating physicians. The ALJ did not err in finding Parsons' note was "not persuasive." (Tr. 21).

In summary, substantial evidence supports the determinations reached by the ALJ. The Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if it finds some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that Saul's final decision is affirmed and

Britton's complaint is dismissed with prejudice.

IT IS SO ORDERED this 9th day of June, 2020.

_____
UNITED STATES MAGISTRATE JUDGE